<u>DECLARATION</u>

1.      I, Cory P. McManus, have been a law enforcement officer for over 18 years and have been a United States Postal Inspector since July 2017. I am currently assigned to the Providence, Rhode Island domicile of the United States Postal Inspection Service and I am responsible for the investigation of various crimes relating to the United States Mail including, but not limited to mail fraud, bank fraud, identity theft, and mail theft. Prior to my appointment as a Postal Inspector, I was a Special Agent with the United States Secret Service for approximately 13 years.

2.      I have received training in conducting investigations of crimes that adversely affect, or fraudulently use, the United States Mail and the United States Postal Service (USPS). I have participated in criminal investigations of various violations of Title 18 of the United States Code involving financial crimes, including mail, bank, and wire fraud, identity theft, money laundering, and computer crimes. In the course of my employment, I have received training and have been involved in the use of investigative techniques such as interviewing victims, informants, and witnesses, conducting physical surveillance, and analyzing financial records. I have participated in and executed dozens of search, arrest, and seizure warrants. I am also authorized to enforce federal forfeiture laws.

3.      This Declaration is submitted in support of the Verified Complaint for Forfeiture *in rem* against the following (collectively, "the Defendant Property"):

a)  $19,990.91 in funds from Pawtucket Credit Union Acct. #xxxx0401);

b)  $100,768.00 in funds from Pawtucket Credit Union Acct. #xxxx0371);

c) $11,409.39 in funds from Pawtucket Credit Union Acct. #xxxx9035);

d) $202,885.14 in funds from Pawtucket Credit Union Acct. #xxxx8145); and

e) $100,000.00 in funds from Washington Trust Acct. #xxxx7840).

4.      As set forth below, there is probable cause to believe that the Defendant Property constitutes, and/or are derived from proceeds of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1349, and therefore are subject to forfeiture to the United States pursuant to pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461 (criminal forfeiture of proceeds from mail/wire fraud), and 981(a)(1)(C) (civil forfeiture of proceeds from mail fraud), 18 U.S.C. § 982(a)(2) (criminal forfeiture of proceeds from mail / wire fraud affecting a financial institution), 18 U.S.C. § 981(a)(1)(D) (civil forfeiture of proceeds from mail / wire fraud affecting a financial institution), and 19 U.S.C. §§ 1607-09 by 18 U.S.C § 981(d) (administrative forfeiture of proceeds of mail/wire fraud).

5.      The statements contained in this Affidavit are based upon my training and experience, information and documents obtained during the course of the investigation, and information obtained from other witnesses and other law enforcement agents involved in this investigation.  Some of the sources of evidence in this investigation include, but are not limited to: United States Postal Service records; witness interviews; victim complaints; business and public records; surveillance, and evidence recovered from the execution of search warrants for electronic accounts of persons affiliated with other similar fraudulent mailing schemes, and in some cases, persons who have been in

contact with the persons running Lucky Dog LLC dba Independent Catalogue Services and its successor company, Destiny Merchandise LLC dba Premium Ops & Incentives, both of which are further described herein. Unless otherwise indicated, where actions, conversations, and statements of others are related herein, they are related in substance and in part.

## RELEVANT STATUTES

6. This investigation concerns alleged violations of Illegal Lottery, Mail and Wire Fraud, and Conspiracy, specifically:

a. Title 18, U.S.C. § 1302 prohibits any person from knowingly depositing in the mail, sending, or delivering by mail ---
   - Any letter or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance; or
   - Any circular, pamphlet, or publication of any kind containing any advertisement of any lottery, gift enterprise, or scheme of any kind offering prizes dependent in whole or in part upon lot or chance, or containing any list of the prizes drawn or awarded by means of any such lottery, gift enterprise, or scheme, whether said list contains any part or all of such prizes.

b. Title 18, U.S.C. § 1341 prohibits a person from devising or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and for the purpose of executing such scheme or artifice or attempting so to do, placing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or depositing or causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed.

    c.   Title 18, U.S.C. § 1343 prohibits a person from devising or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises and, transmitting or causing to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

    d.   Title 18, U.S.C. § 1349 prohibits a person from attempting or conspiring to commit a violation of Title 18, U.S.C. §§ 1341 and 1343.

## FACTS SUPPORTING PROBABLE CAUSE

### A.   Investigation Overview

7.    This investigation involves a deceptive and fraudulent mass mailing campaign conducted by Meagan (Quinn) Shine ("Shine") of Cranston, Rhode Island, and a number of Rhode Island business entities, including Lucky Dog LLC dba Independent Catalogue Services ("ICS") and its successor company, Destiny Merchandise LLC ("Destiny") dba Premium Ops & Incentives ("POI") (hereinafter collectively referred to as ("Lucky Dog").

8.    From approximately 2011 through approximately 2018, Shine and Lucky Dog have worked together to obtain mailing lists and used those lists to send deceptive mailings to consumers throughout the United States (the "victims"), all with the goal of receiving payments from the recipients of the mailings.  None of the victims who responded to the deceptive solicitations, and who were interviewed during the course of this investigation, were sent large cash awards or other valuable prizes.

9.       The perpetrators created dozens of direct mail solicitations falsely and fraudulently notifying the victims that they were eligible to win large amounts of money and other valuable prizes in a sweepstakes or other contest and, as a result, the victims were fraudulently induced to pay money for falsely promised cash awards and luxury prizes.  The false solicitations directed the victims to send money to pay purported processing fees associated with their promised winnings and prizes.  The victims were provided pre-addressed return envelopes that the victims were instructed to use to return their payments.  Although the solicitations communicated to the victims that they had been individually selected, the solicitations were, in fact, identical, mass-produced form letters sent to the victims based on their inclusion in mass-mailing lists targeted to vulnerable consumers.

10.       To date, this investigation has identified thousands of individuals who, between March 2011 and November 2018, responded to the mailings sent by the Lucky Dog entities and affiliated persons and sent them over $10,500,000.00.  The victim payments were sent to the Lucky Dog entities and affiliated persons via U.S. Mail to multiple Post Office (PO) Boxes in Providence, RI and at times, were processed by a now defunct payment processor.

**Overview of Fraudulent Solicitation Schemes**

11.       As part of my investigation into fraudulent solicitation schemes involving American victims, I have learned that tens of thousands of fraudulent lottery-related solicitations are mailed to American victims nearly every day.  These solicitations take many forms, but all contain misrepresentations that are designed to trick elderly or

otherwise vulnerable victims by making false and fraudulent claims that the individual recipient has already won or will soon win a large cash prize that will be disbursed once the recipient has paid a small fee. In some instances, the solicitations falsely represent that the recipient was personally selected and that personalized efforts on the recipient's behalf already have been taken. In reality, the solicitations are mass mailed to recipients whose names and contact information were acquired from a mailing list.

12.    A prize notice is defined as a mailed solicitation to a victim that contains fraudulent and materially false information designed to induce a victim into believing that they won a prize, award, or sum of money. A prize notice often displays the "prize" prominently and includes a collection of indicia (such as large bold font, stamps, seals, signatures, and check boxes that appeared to have been applied by hand) to convey that the prize notice is legitimate, "official" or sponsored by a government entity.

13.    To obtain the "prize," the solicitation often represents that the victim must pay a fee (often between $20-$30) as a "report fee," "transmittal fee," "accounting fee," or similar language. Yet, these prize notices often contain an obscure disclaimer with difficult to read and understand language which states that victims who respond (and pay money) will not receive a prize, but instead receive a near-worthless sweepstakes report or a low value piece of merchandise. Many victims of prize notice schemes are elderly and vulnerable.

14.    While these kinds of solicitations collect millions of dollars a year from recipients, the recipients do not receive the large cash awards promised in the

solicitations.  If a recipient does receive a response, it is an item of nominal value, or a catalog listing various sweepstakes the recipient can enter, rather than the lucrative prize being advertised.

15.    Shine and Lucky Dog rented lists of consumers information and refined the lists to target those most likely to respond. Many of the lists Shine and Lucky Dog rented contained names, addresses, and other information of victims of other fraudulent and deceptive schemes.

16.    A "front end" prize notice is defined as an initial prize notice that is mailed to a list of prospective victims. A "back end" prize notice is defined as part of a series of repetitive prize notices that are mailed to a targeted group of victims deemed highly likely to remit payment in response to a prize notice. These victims are deemed highly likely to remit payment because they often previously remitted payment in response to a prior "front end" or "back end" mailing. These "back end" mailings are often sent to victims at weekly (or at sometimes more frequent) intervals.

**Fraudulent Solicitations Sent to Victims by Mail**

17.    In the course of the investigation, I have interviewed several victims.  At least 10 of the identified victims were over the age of 55.  The victims all report a similar series of events leading to their sending money to ICS and/or POI.[1]  The victims reported that they were contacted via U.S. Mail and by letter, were told they were

---

[1] When the organization operated under the Lucky Dog name, the mailers directed payments be sent to Independent Catalog Services or ICS.  When the organization later operated under the Destiny name, the mailers directed payments to be sent to Premium Opportunities and Incentives or POI.

entitled to claim a large amount of money in a lottery.  In the mailing, they were instructed to send money to Independent Catalogue Services (ICS) via U.S. Mail to PO Box 6487, Providence, RI and/or Premium Opportunities & Incentives (POI) via U.S. Mail to PO Box 6267, Providence, RI in advance of receiving their purported winnings. The victims were told that the money they were directed to send was for the payment of processing fees on their winnings.

18.     The investigation has revealed that Destiny/POI sent multiple mailings, each with a different appearance, to a single victim, advising the victim of winnings and in each mailing, it requests that a fee be sent to POI.

19.     To facilitate this scheme, Shine and others created business entities, and fictitious business names for those entities, including, but not limited to:

      a.  Destiny Merchandise, LLC, d/b/a Premium Opportunities & Incentives;

      b.  Merchandise Incentives, LLC;

      c.  Premier Caging Services, LLC;

      d.  Lucky Dog, LLC, d/b/a Independent Catalogue Services;

      e.  Merchandise Incentives, LLC, d/b/a Elite Merchandise and Reporting;

      f.  Marketing Advisors, LLC, d/b/a Prize Research Publications, Ultimate Opportunity Disclosures, Winning Opportunities Group, Sweepstakes Made Easy, and Sweepstakes Drawing Compendium;

      g.  ORA, LLC, d/b/a Prize Report Commission, Corporate, Cash & Prize Directives, and U.S. Sweeps Reporting; and

    h.  Marketing International Management LLC, d/b/a Global Prize Compendium, Consolidated Awards Group, American Sweepstakes Reporting, and International Award Opportunities.

20.    It was part of the scheme that Shine and others used fictitious names for those entities.

21.    Shine and others rented lists of consumer information from third parties, created their own lists of consumer information using names of victims who previously paid in response to fraudulent prize notices, and rented their lists to other fraudulent mailers.

22.    Shine and others prepared, sent, and caused to be sent a variety of fraudulent prize notices through the United States Postal Service.

23.    Shine and others utilized mail schedules to send "front end" and "back end" prize notices, thereby identifying victims who were vulnerable to the scheme and sending to those victims frequent and repeated prize-notice mailings to maximize the number of times a victim would send money.

24.    Shine and others mailed prize notices that deceived their victims into believing that they had received an urgent notice of a large cash or other valuable prize. The prize notices often mimicked official or government approval and possessed titles such as "Official Identification Document," "Financial Advisory," "Notification of Payments Pending," and "Notice of Intent to Deliver / Division of Unawarded Prizes." The mailings appeared to be sent by corporate organizations with names such as: "Independent Catalog Services," "Prize Report Commission," "ICS Cash and Prizes

Award Department," and "Opportunity Advisory." Many prize notices purported to come from individuals who possessed official titles such as "Reporting Director," "Executive Director," "Director of Distributions," or "Managing Director."

25.     Prize notices mailed by Shine and others contained materially false and fraudulent representations intended to deceive their victims into believing they had already won or were close to winning a large cash or other valuable prize.

26.     Shine and others used graphics (such as stamps, seals, signatures, and check boxes that appeared to have been applied by hand) with the intent to induce their victims into believing that their prize notice was unique to them and personally handled.

27.     Shine and others mailed hundreds and thousands of prizes notices at a given time. Each prize notice appeared to be individually prepared for the victim, often repeating the victim's name throughout and containing unique document and claim numbers and asking the victim to confirm their identity as the person to whom the prize notice was addressed. In reality, these prize notices were form letters intended to induce the victim into believing that they were individually selected for a prize.

28.     Shine and others included purported disclaimers in the prize notices stating, among other things, that those who responded would receive a report listing sweepstakes they could enter or a piece of low-cost merchandise. However, the purported disclosures did not correct the false statements and misrepresentations described elsewhere in the prize notices. That is, in part, because the defendant, Shine

and others intentionally hid and obscured the purported disclaimer language in their prize notices and intended for their purported disclaimers to be ineffective.

29.     Shine and others instructed their prize notice victims to return a small fee, generally between $20 and $30, along with a portion of the prize notice. The mailings contained a return envelope addressed to post office boxes rented, operated, and controlled by the defendant, Shine.

30.     It Shine and others directed victims to send responses and money through the United States Postal Service to post office boxes located in Rhode Island and elsewhere. One such post office box (among others) was PO Box 6267, Providence, RI 02940.

31.     Instead of sending paying victims the large cash or other valuable prize represented in their prize notices, Shine and others often used the United States Postal Service to send paying victims a near-worthless booklet containing publicly available sweepstakes rules, a small and inexpensive piece of jewelry or similar merchandise, or both.

32.     Shine and others received and responded to frequent letters and notes from victims of their prize notice scheme, government authorities, and consumer advocates, including such correspondence from victims who inquired about the status of prize money after they paid the requested fees, complained about having not received their prize money after paying fees, and related that they were in fact deceived and that Shine and others were carrying out a "scam" (or similar term). The response often included refunding victims their fees with the intent to deflect suspicion of their

activities and conceal their scheme from government authorities and consumer advocates.

33.    Shine and others utilized a third-party payment processor located in Canada and utilized financial institutions to deposit, process, and distribute victims' payments to themselves and others for the purpose of personal enrichment.

34.    Shine and others paid individuals known as J.M. and L.M. as consultants to provide advice and support on the operation of the scheme, including advice on lists of potential victims to rent from other mailers.

35.    Shine and others utilized a software company operated by J.M. and L.M. to host a database of victims that had responded to the prize notices.  The software company also provided data-processing services, including creating mailing files of addresses for back end prize notice mailings.

36.    Shine and others collected more than $10 million from victims during the course of their scheme.

**Acts in Furtherance of the Scheme**

37.    On or about August 27, 2008, Shine, then known as Meagan Roberts, filed articles of organization with the State of Rhode Island to establish Marketing International Management, LLC, listing herself as the sole manager. Between on or about May 5, 2009, and on or about February 24, 2010, Shine filed or caused to be filed fictitious business name statements listing International Award Opportunities, Global Prize Compendium, Consolidated Awards Group, and American Sweepstakes Reporting, as fictitious business names for Marketing International Management, LLC.

38.    In or around December 2010, Shine and others caused a prize notice to be delivered throughout the United States via the U.S. Postal Service. The prize notice from "International Award Opportunities" stated "TOTAL IDENTIFIED UNAWARDED PRIZES OVER: * * * * * $3,500,000.00 * * * * *." and on the next line, "OFFICIAL NOTIFICATION OF UNAWARDED CASH AND PRIZES IS HEREBY ACKNOWLEDGED AND PRIZES IN THE AMOUNT OF NO LESS THAN $3,500,000.00 ARE GUARANTEED AND ON DEPOSIT."

The prize notice then added:

> "NOTIFICATION OF AVAILABLE UNAWARDED CASH AND PRIZES" followed by: "[Victim's name and address], has been officially recognized with regards to the amount over $3,500,000.00 in prizes, and as of 12/16/2010, legally eligible to enter and receive the FULL amount described herein. This opportunity is reserved for you under Personal Identification number 20065050523. Your prompt payment guarantees immediate reporting of these monies, documented completely with all necessary entry and claim instructions including deadlines." A different page of the prize notice was titled: "PRIZE NOMINATION CERTIFICATE." On this same page, victims were asked to confirm their eligibility and enclose a $20 fee with their response.

39.    On or about September 16, 2010, Shine, then known as Meagan Quinn, filed articles of organization with the State of Rhode Island to establish ORA, LLC, listing herself as the sole manager. On or about September 17, 2010, Shine filed or caused to be filed fictitious business name statements listing Prize Report Commission, Corporate, Cash & Prize Directives, and U.S. Sweeps Reporting, as fictitious business names for ORA, LLC.

40.    On or about March 21, 2011, Shine, then known as Meagan Quinn, filed articles of organization with the State of Rhode Island to establish Marketing Advisors, LLC, listing herself as the agent and the sole manager. On or about March 21, 2011, Shine filed or caused to be filed fictitious business name statements listing Prize Research Publications, Ultimate Opportunity Disclosures, Winning Opportunities Group, Sweepstakes Made Easy, and Sweepstakes Drawing Compendium as the fictitious business names for Marketing Advisors, LLC.

41.    On or about August 11, 2011, Shine, then known as Meagan Quinn, filed articles of organization with the State of Rhode Island to establish Merchandise Incentives, LLC, listing herself as the manager. On or about September 13, 2011, Shine filed or caused to be filed a fictitious business name statement listing Elite Merchandise and Reporting as the fictitious business name for Merchandise Incentives, LLC.

42.    On or about January 12, 2012, an individual known as M.S filed articles of organization with the State of Rhode Island to establish Lucky Dog, LLC, listing himself as the agent.  On or about January 17, 2012, a fictitious business name statement was filed listing Independent Catalogue Services as the fictitious business name for Lucky Dog. On or about April 24, 2013, an amendment was filed to the articles of organization changing the company from member-managed to manager-managed, and adding Shine, then Meagan Roberts Quinn, as a manager. On or about September 28, 2016, Shine filed or caused to be filed a statement of change of agent, changing the agent for Lucky Dog, and listing herself as the new agent for Lucky Dog.

43.     In or around April 2014, Shine and others caused a prize notice to be delivered throughout the United States via the U.S. Postal Service. The prize notice from "Independent Catalogue Services" stated "NOTICE OF INTENT TO DELIVER DIVISION OF UNAWARDED PRIZES."

The prize notice then added:

"Dear [Victim's Name], As executive director of Independent Catalogue Services, it brings me great pleasure to inform you of this momentous opportunity that has been bestowed upon you on this day, 04/21/2014. [Victim's Name and Address] you have been guaranteed with no exceptions, full eligibility to over $3,015,450.00 in cash & prize opportunities by third party sponsors. According to our records ensuing an in depth and complex data verification process, you have been successfully selected and specifically assigned the following PERSONAL IDENTIFICATION NUMBER: ***** [Victim's Name] PIN: 10001952934 RE $3,015,450.00***** [Victim's Name], to finalize all the necessary procedures required for complete delivery of your over $3,015,450.00 in cash directives, simply complete Requisition 15ICS-08 and return it to Independent Catalogue Services in the enclosed envelope with $20 document fee postmarked by 05/05/2014." A different page of the prize notice stated "THIS FORMAL NOTICE FROM THE WIN-OPPORTUNITIES DIVISION CONTROLLER CONFIRMS THAT RELEASE Of THEIR REPORT OF ENTRY DIRECTIVES AND PROCEDURES FOR THE FULL AMOUNT Of $3,015,450-00 IN CASH AND PRIZES TO [Victim's Name and Address] IS NOW READY. TO COMPLETE THIS REQUEST AND RECEIVE ENTRY DIRECTIVES REGARDING THE FULL $3,015,450.00, IT IS REQUIRED THAT YOU RETURN THE PRIZE PAYOUT ENTRY DIRECTIVES AUTHORIZATION BELOW BY MAIL AS FOLLOWS. SIGN, DETACH AND ENCLOSE WITH NOTED REPORT FEE IN THE RETURN ENVELOPE PROVIDED POSTMARKED BY 05/06/2014. [Victim's Name], THE LAW REQUIRES THAT THE FULL $3,015,450-00 WILL BE DISTRIBUTED BY AN INDEPENDENT SWEEPSTAKES SPONSORS. HOWEVER, OUR

POLICIES PROHIBIT US FROM DELIVERING ANY PRIZE ENTRY DATA TO YOU If YOU DO NOT RESPOND BY 05/06/2014 AS INDEPENDENT SPONSORS STRICTLY ENFORCE ENTRY DEADLINES. THAT WOULD BE YOUR TERRIBLE LOSS. PLEASE TAKE CARE Of THIS NOW BEFORE TIME SLIPS AWAY FROM YOU. WE LOOK FORWARD TO SENDING YOU THE FULLY APPROVED REPORT VERY SOON." On this same page, victims were asked to confirm their eligibility and enclose a $20 fee with their response.

44.     On or about June 6, 2012, an individual known as M.P. filed articles of organization with the State of Rhode Island to establish Premier Caging Services, LLC, listing herself as the agent, at the instruction of Shine.

45.     On or about October 12, 2016, Shine filed articles of organization with the State of Rhode Island to establish Merchandise Incentives, LLC, listing herself as the agent.

46.     On or about October 12, 2016, Shine filed articles of organization with the State of Rhode Island to establish Destiny Merchandise, LLC, listing herself as the agent. On or about November 16, 2016, Shine filed a fictitious business name statement listing Premium Opportunities and Incentives as the fictitious business name for Destiny Merchandise, LLC.

47.     On or about February 3, 2017, Shine sent an e-mail to M.P. In that e-mail, Shine wrote: "[c]an't try anything new until we get some more cash flow going. I'm not against this idea. I'm not going to just immediately bail on merchandise. We made an investment in it. If we need to keep doing sweeps for a while to get some cash flow so

be it. I do plan on doing the 2 sweeps mailing you suggested earlier this week. I just need to figure out when we can do it. Hopefully I'll know better by Tuesday."

48.    In or around November 2018, Shine and others caused a prize notice to be delivered throughout the United States via the U.S. Postal Service. The prize notice from "Premium, Opportunities & Incentives" stated "PROCEDURE 1: PRE-REGISTRATION" and on the next line, "ON 10/26, [VICTIM'S NAME] WAS PRE-REGISTERED FOR THE OPPORTUNITY TO CLAIM A PRIZE AGENDA REPORT TOTALING $3,000,000."

The prize notice then added:

> "PROCEDURE 2: MONITORED DELIVERY" followed by: "[VICTIM'S ADDRESS] ADDRESS. THESE OUTGOING DOCUMENTS WERE ASSIGNED A UNIQUE MONITORING & TRACKING CODE 80104875645. THIS CODE WAS ALSO ASSIGNED TO YOUR PREMIER OFFER OF A CULTURED PEARL & SWAROVSKI CRYSTAL BRACELET AT YOUR ACCEPTANCE OF PRIZE AGENDA REPORT. . . YOU ARE NOW ASKED TO COMPLETE THE DOCUMENT BELOW IN ACCORDANCE WITH THE INSTRUCTIONS TO CLAIM THE $3,000,000 PRIZE AGENDA REPORT DESCRIBED. >>> Use the MONITORED DELIVERY ENVELOPE for your response. Due to importance of this $3,000,000 opportunity, Premium, Opportunities & Incentives encourages you to return the Acceptance Prize Agenda Form A.S.A.P. >>>This document is non-transferable and is for your use alone to claim $3,000,000 Prize Agenda eligibility. It is essential you place your response in return mail by 11/16." Below this is the portion of the prize notice that victims were asked to send with payment, which states in large text: "ACCEPTANCE FORM $ AMOUNT: * * $3,000,000.00 * * THREE MILLION DOLLARS AND 00/100." Victims were asked to confirm their eligibility and enclose a $25 fee with their response.

49.     On or about November 20, 2018, M.P. sent an e-mail to a representative of COMPANY 1 at the instruction of Shine. In that e-mail, M.P. directed COMPANY 1 to prepare prize notices to be mailed to victims who previously remitted payments to Shine and others in response to earlier prize notices.

50.     On or about November 26, 2018, Shine sent an e-mail to M.P. The e-mail contained a reminder from the U.S. Postal Service for Shine to renew the lease for PO Box 6267, Providence, RI 02940. On or about November 26, 2018, M.P. agreed to renew the lease for PO Box 6267, Providence, RI 02940.

51.     On or about November 26, 2018, M.P. sent an e-mail to a representative of COMPANY 2 at the instruction of Shine. M.P.'s e-mail authorized COMPANY 2 to prepare and mail prize notices.

52.     Between on or about November 26, 2018, and on or about November 28, 2018, M.P. electronically remitted three payments at the instruction of Shine, which totaled $5,237.70, to COMPANY 2, for the preparation and mailing of prize notices.

53.     On or about December 7, 2018, M.P. electronically remitted three payments at the instruction of Shine, which totaled $4,873.02, to COMPANY 2, for the preparation and distribution of prize notices.

**Execution of the Scheme**

54.     On or about the dates set forth in the chart below, in the District of Rhode Island and elsewhere, Shine¸ also known as "Meagan Quinn" and "Meagan Roberts," knowingly, and with the intent to defraud, devised a scheme to defraud and to obtain

money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and did, for the purpose of executing and attempting to execute the scheme, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon:

| Count | Approximate Date | Means of Executing Scheme to Defraud |
|---|---|---|
| 1 | Between on or about November 19, 2018 and December 2018. | Caused "URGENT MEMO" $3,000,000.00 prize notice to be sent to addresses in the United States and caused Victim responses to be sent to a post office box in Rhode Island, all by U.S. Mail. |
| 2 | Between on or about November 20, 2018 and December 2018. | Caused "TIME-SENSITIVE DOCUMENT NOTIFICATION" $3,000,000.00 prize notice to be sent to addresses in the United States and caused Victim responses to be sent to a post office box in Rhode Island, all by U.S. Mail. |
| 3 | Between on or about November 30, 2018 and December 2018. | Caused "CONFIRMATION REQUEST" $3,000,000.00 prize notice to be sent to addresses in the United States and caused Victim responses to be sent to a post office box in Rhode Island, all by U.S. Mail. |
| 4 | Between on or about November 16, 2018 and December 2018. | Caused "VERIFICATION DIVISION" $3,000,000.00 prize notice to be sent to addresses in the United States and caused Victim responses to be sent to a post office box in Rhode Island, all by U.S. Mail. |

Each in violation of 18 U.S.C. §§ 1341 and 2.


**Funds Obtained Via Fraud Are Comingled in Accounts Owned by Meagan Shine**

55.    As described below, the investigation shows that between November 2016 and October 2018, over $2,000,000 in checks and over $600,000 in cash from victims all over the country were deposited in Pawtucket CU Account #xxxx8145, held in the name

of Destiny/POI. Most of these checks appears have been received from victims in response to the fraudulent solicitations, insofar as they were in amounts of $25.00 and $30.00 and were from personal accounts, money orders or cashier checks. As described below, the money was thereafter transferred into several accounts, including a second Pawtucket CU business account, Pawtucket CU Account #xxxx9035 in the name of Lucky Dog LLC, and to a personal account, Pawtucket CU Account #xxxx0401, in the name Meagan E Shine.

56.     Victims' monies sent to POI and deposited into the Destiny/POI Pawtucket CU Account #xxxx8145, then flowed to the other DEFENDANT PROPERTY. Fraud proceeds received by Destiny/POI were transferred into other accounts owned and operated by the persons associated with Lucky Dog, and in some cases, the comingled funds (which became fraud proceeds as a result of the comingling) were transferred into, and among other accounts owned and operated by the persons affiliated with Lucky Dog. In my training and experience, the number of transfers among these accounts and the circuitous path of transfers among these accounts shows an effort to conceal fraudulent proceeds.

57.     Pawtucket Credit Union ("CU") Account #xxxx9035 was opened on July 9, 2015, in the name Lucky Dog LLC. The owner was listed as Meagan E. Quinn. Rhode Island driver's license #xxx2131, issued to Meagan E Shine, was listed as the form of identification used in opening Pawtucket CU Account #xxxx9035.

     i.     Pawtucket CU Account #xxxx8145 (Destiny POI) Receives the Fraudulent Proceeds and Transfers / Disburses Money to Other Accounts of the Lucky Dog Entities and Affiliated Persons

58.    Pawtucket Credit Union Account #xxxx8145 was opened on November 17, 2016 in the name Destiny Merchandise LLC dba Premium Ops & Incentives.  The description of the business was listed as "Merchandise Sales".  The products provided to the business's customers were listed as "Jewelry/Accessories."  The owner of the account was listed as Shine.

59.    A review of activity for the period November 2016 thru October 2018 revealed credits to Account #xxxx8145 totaled approximately $2,847,715.21, of which $2,839,942.03 was comprised of in-branch deposits consisting of cash, checks and money orders made payable to POI in amounts of $25.00, $30.00 and $35.00.  Most of the checks were from personal accounts from individuals all over the country who appear to have responded to one or more deceptive mailings.  Other deposits consisted of money orders and cashier's checks.  Deposited checks and money orders totaled $2,166,788.03 and cash deposits totaled $673,154.00.

60.    The review of Account #xxxx8145 revealed withdrawals and debits for the period November 2016 thru October 2018 totaled $2,618,759.54 and consisted primarily of checks, internet transfers to Pawtucket CU Account #xxxx9035 (Lucky Dog LLC dba Independent Catalogue Services), Point of Sale (POS) transactions and Automated Clearing House (ACH) Debits.  The majority of checks were payable to: Lucky Dog LLC, Meagan Shine, and Kessler Creative LLC, a full-service direct marketing firm.  Other debits appear to be personal expenditures at restaurants and pubs, convenience stores, train and airline tickets, hotels, pharmacies, liquor stores, miscellaneous shops, and gas stations, among others.

61.     Between November 2016 and October 2018 there were 104 checks totaling $896,503.00 in amounts ranging between $203.00 and $20,000.00 drawn on Account #xxxx8145 (Destiny/POI) and made payable Lucky Dog LLC and deposited into Pawtucket CU Account #xxxx9035 (Lucky Dog).

62.     Between November 2016 and October 2018 there were 41 internet transfers totaling $770,000.00 from Pawtucket CU Account #xxxx8145 (Destiny/POI) to Pawtucket CU Account #xxxx9035 (Lucky Dog) in amounts ranging between $5,000.00 and $30,000.

63.     Between June 2017 and October 2018 there were 27 checks totaling $467,895.00 in checks drawn on Account #xxxx8145 (Destiny/POI) and made payable to Meagan Shine in amounts ranging between $5,895.00 and $50,000.00 which were deposited into Shine's personal account at Pawtucket CU (#xxxx0401).

64.     As detailed below, on June 20, 2018, a $15,000 check from Pawtucket CU Account #xxxx8145 (Destiny/POI) was deposited into personal Pawtucket CU Account #xxxx8773 of Shine.

     ii.     Pawtucket CU Account #9035 (Lucky Dog LLC) Receives Fraudulent Proceeds from Pawtucket CU Account #xxxx8145 (Destiny Merchandise LLC)

65.     The review of account activity for the period July 2015 thru October 2018 revealed credits to the Lucky Dog Pawtucket CU Account #xxxx9035 totaling $2,086,032.17, the majority of which came from $896,503.00 in checks made payable to Lucky Dog drawn on Account #xxxx8145, and $770,000.00 in internet transfers from Pawtucket CU Account #xxxx8145 (Destiny/POI).

66.     The review of activity on the Lucky Dog Pawtucket CU Account #xxxx9035 shows in-branch deposits in 2015 and 2016 that included cash, as well as checks and money orders that appear to be from victims all over the country who responded to one or more deceptive mailings.  The deposits of apparent victim cash and checks ceased on or about November 2, 2016, just prior to when Pawtucket CU Account #xxxx8145 (Destiny/POI) was opened.

67.     Specifically, between November 2016 and October 2018 there were 104 checks totaling $896,503.00 in amounts ranging between $203.00 and $20,000.00 drawn on Account #xxxx8145 (Destiny/POI) and made payable Lucky Dog LLC and deposited into Pawtucket CU Account #xxxx9035 (Lucky Dog), examples of which are listed below:

| ACCOUNT | DATE | AMOUNT | CHECK # | PAYEE |
|---|---|---|---|---|
| xxxx8145 | 19-Jan-2017 | $9,000 | 1006 | LUCKY DOG LLC |
| xxxx8145 | 7-Nov-2017 | $20,000 | 1127 | LUCKY DOG LLC |
| xxxx8145 | 08-Dec-2018 | $15,000 | 1140 | LUCKY DOG LLC |

68.     As to the internet transfers, between November 2016 and October 2018 there were 41 internet transfers totaling $770,000.00 from Account #xxxx8145 (Destiny/POI) to Pawtucket CU Account #xxxx9035 (Lucky Dog) in amounts ranging between $5,000.00 and $30,000.00.  Examples of these transfers are shown by the following:

| ACCOUNT | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|
| xxxx8145 | 22-Dec-2017 | $20,000 | Internet Trans to xxxx9035 |
| xxxx8145 | 19-Mar-2018 | $20,000 | Internet Trans to xxxx9035 |
| xxxx8145 | 25-Oct-2018 | $20,000 | Internet Trans to xxxx9035 |

69.    The receipt of the funds from these checks and internet transfers shows that fraudulent proceeds from the Pawtucket CU Account #xxxx8145 (Destiny/POI) were deposited into the Lucky Dog Pawtucket CU Account #xxxx9035.

70.    The review of Lucky Dog Pawtucket CU Account #xxxx9035 also revealed withdrawals and debits that totaled $2,069,819.09 and consisted primarily of Point of Sale (POS) & Automated Clearing House (ACH) debits and checks.  POS and ACH debits were used to pay what appear to be both business and personal expenditures.  Business expenditures included payments to A-Plus Letter Services, a New Jersey based mail house/letter shop that provides direct mail, mailing services, invoice mailings, printing, fulfillment, and warehousing along with Paychex–Payroll, USPS Postage Stamps.com, and 409 Atwells Ave LLC Rent (for rent).  Personal expenditures included American Express payments, auto finance payments, restaurants and pubs, convenience stores, airline tickets, hotels, liquor stores, miscellaneous shops, and gas stations, among others.

71.    Between November 2016 and October 2018, there were 319 ACH transfers totaling $274,876.13 in amounts ranging from $31.80 and $1,877.15 from Pawtucket CU Account #xxxx9035 (Lucky Dog) to Paychex, Inc. which, as described below, were used to fund payroll payments to Shine, M.S., M.P., and K.S.  Examples of the transfer of funds from Pawtucket CU Account #xxxx9035 (Lucky Dog) to Paychex, Inc. are set forth below:

| ACCOUNT | DATE | AMOUNT | DESCRIPTION |
|---------|------|--------|-------------|
| xxxx9035 | 3-Nov-2016 | $1,848.27 | PAYCHEX PAYROLL via ACH |
| xxxx9035 | 26-Oct-2017 | $1,849.57 | PAYCHEX PAYROLL via ACH |

| | | | |
|---|---|---|---|
| xxxx9035 | 26-Oct-2018 | $867.94 | PAYCHEX PAYROLL via ACH |

    iii.    **Meagan Shine's Personal Pawtucket CU Account # xxxx0401 Receives Fraud Proceeds from Pawtucket CU Account #xxxx9035 (Lucky Dog) and Pawtucket CU Account #xxxx8145 (Destiny/POI) and Sends <u>Comingled Fraud Proceeds to Two Accounts</u>**

72.    Shine, using her RI Driver's License, opened Pawtucket CU Account #xxxx0401 on November 10, 2016.

73.    The review for the period November 2016 through October 2018 showed credits to the account totaling $739,275.50, which consisted primarily of in-branch deposits, such as checks, and payroll payments from Lucky Dog.

74.    Specifically, between June 2017 and October 2018, there were 27 checks totaling $467,895.00 in checks deposited into Shine's personal account at Pawtucket CU Account #xxxx0401 (Meagan Shine) that were drawn on Account #xxxx8145 (Destiny/POI) and made payable to Meagan Shine in amounts ranging between $5,895.00 and $50,000.00, examples of which are set forth below:

| ACCOUNT | DATE | AMOUNT | CHECK # | PAYEE |
|---|---|---|---|---|
| xxxx8145 | 6-June-2017 | $12,000 | 1091 | MEAGAN SHINE |
| xxxx8145 | 15-Feb-2018 | $20,000 | 1144 | MEAGAN SHINE |
| xxxx8145 | 26-Oct-2018 | $50,000 | 1202 | MEAGAN SHINE |

75.    Between January 2017 and October 2018, Shine received 92 Lucky Dog payroll payments totaling $85,623.16 in amounts ranging between $351.94 and $1,201.42 that were deposited into her Pawtucket CU Account #xxxx0401 (Meagan Shine). Examples of those payments are set forth below:

| ACCOUNT | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|
| xxxx0401 | 6-Jan-2017 | $872.28 | LUCKY DOG LLC–PAYROLL via ACH |

| | | | |
|---|---|---|---|
| xxxx0401 | 1-Dec-2017 | $872.29 | LUCKY DOG LLC-PAYROLL via ACH |
| xxxx0401 | 26-Oct-2018 | $1,201.42 | LUCKY DOG LLC-PAYROLL via ACH |

As set forth above, the payroll service (Paychex) was funded from Pawtucket CU Account #xxxx9035 (Lucky Dog LLC).

76.    A review of Pawtucket CU Account #xxxx0401 (Meagan Shine) also shows that from November 2016 to October 2018, at least $453,070.30 in funds were transferred from the account into Shine's personal Pawtucket CU Account # xxxx0371.

  iv.    Meagan Shine's Personal Pawtucket CU Account # xxxx0371 Receives Comingled Fraud Proceeds from her Pawtucket CU Account # xxxx0401 <u>and Sends Comingled Fraud Proceeds to Another Account</u>

77.    Shine, using her RI Driver's License, opened Pawtucket CU Account #xxxx0371 on November 10, 2016, in the name Meagan E. Shine.

78.    A review of the account revealed credits to the account from November 2016 to October 2018 totaling $453,070.30.  The deposits included 14 internet transfers totaling $377,000.00 in amounts ranging in from $4,000.00 to $100,000.00, all from Pawtucket CU Account #xxxx0401 (Meagan Shine).  Examples of some of the transfers are set forth below:

| ACCOUNT | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|
| xxxx0371 | 24-May-2017 | $8,000 | Online Funds Transfer From xxxx0401 |
| xxxx0371 | 9-Nov-2017 | $29,000 | Online Funds Transfer From xxxx0401 |
| xxxx0371 | 29-Oct-2018 | $100,000 | Online Funds Transfer From xxxx0401 |

  v.    Meagan Shine's Personal Washington Trust Bank Account # xxxx7840 Receives Comingled Fraud Proceeds from her Pawtucket CU Account # <u>xxxx0401</u>

79.    On December 5, 2018, Shine opened Acct# xxxx7840, a new business account at Washington Trust Bank, in the name Westford Holdings LLC.  Shine is listed as the authorized signer.

80.    On or about December 7, 2018, check #156 for $100,000 that was drawn on Pawtucket Credit Union Acct xxx0401 (Meagan E Shine) was deposited into newly opened Washington Trust Acct# xxxx7840.  The authorized signer on the account is Meagan Shine.

## **CONCLUSION**

81.    I therefore respectfully submit that there is probable cause to believe that the targets of this investigation are involved in a fraudulent mass mailing campaign and money laundering of those proceeds and that there is probable cause to believe that the DEFENDANT PROPERTY constitutes and or is derived from proceeds from mail fraud, wire fraud, and/or conspiracy to commit the same and subject to forfeiture civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Sworn and subscribed before me this 20th day of June 2024.

CORY P. McMANUS
Postal Inspector